UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICOLE M. S.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**DECISION AND ORDER**

6:20-cv-6492–JJM

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [13, 14].[2] The parties have consented to my jurisdiction [15]. Having reviewed their submissions [13, 14, 16], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

The parties' familiarity with the 895-page administrative record [10] is presumed. On January 9, 2017, plaintiff filed concurrent applications for Supplemental Security Income ("SSI") and Social Security Disability ("SSD") benefits, alleging an onset date of January 1,

1 In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

2 Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

2016. Administrative Record [10] at 160.[3] Plaintiff initially alleged that her ability to work was limited by bipolar disorder, anxiety, depression, and stomach problems. Id. at 202. She later testified that she also suffered from back and hand problems, seizures, and panic attacks. Id. at 41-42. Plaintiff's claim was initially denied. Id. at 15.

Administrative Law Judge ("ALJ") Brian LeCours conducted a hearing on March 8, 2019. Id. Plaintiff appeared with a non-attorney representative. Id. ALJ LeCours thereafter issued a Notice of Decision denying plaintiff's claim. Id. at 12-28. In his decision, ALJ LeCours found that plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release surgeries, migraine headaches, seizure disorder, lumbar degenerative disc disease, bipolar disorder, anxiety disorder, and personality disorder. Id. at 17. He also assessed plaintiff as having "moderate limitation[s]" in her ability to understand, remember or apply information; to concentrate, persist, or maintain pace; and to interact with others; in addition to a "mild limitation" in adapting or managing herself. Id. at 19.

ALJ LeCours determined that plaintiff nonetheless retained the residual functional capacity ("RFC") to perform "light work" as defined by the applicable regulations,[4] except that she could occasionally push, pull, and perform handling and fingering with upper extremities; never climb ladders, ropes, or scaffolds; never be exposed to unprotected heights and dangerous machinery; and never drive commercially. Id. at 20. He further found that plaintiff's work must consist only of unskilled tasks, requiring little or no judgment; simple duties that can be learned

[3] Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

[4] Light work is defined to "involve[] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. §§404.1567(b), 416.967(b). Such work can "require[] a good deal of walking or standing, or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls". Id. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10.

on the job in a short period of time; must be low stress work with few workplace changes; and involve no more than occasional interaction with the general public and coworkers or frequent interaction with supervisors. Id.

In analyzing the physical component of the RFC determination, ALJ LeCours considered plaintiff's hearing testimony regarding her capabilities, her treatment history, and the report of consultative examiner Trevor Lichtmore, M.D., to which he gave significant weight. Id. at 21-23, 348-351. With respect to the mental component, ALJ LeCours considered the opinions of licensed mental health counselor ("LMHC") Shannelle Slade, consultative examiner Christine Ransom, PhD, and State Agency psychiatric consultant A. Dipeolu, PhD, but gave only limited weight to each. Id. at 23-25. He indicated that he based the mental restrictions of the RFC on the claimant's testimony, medical source reports, mental evaluation findings, and "giving claimant the benefit of the doubt". Id. at 25.

## ANALYSIS

Plaintiff argues that ALJ LeCours' RFC finding is unsupported by substantial evidence because: (1) he failed to consider a medical opinion of plaintiff's obstetrician Jamesine Williams, M.D., which indicated a high level of physical functional limitations; (2) he failed to properly weigh the evidence relating to her mental RFC, including several opinions from LMHC Shannelle Slade indicating significant limitations; and (3) he improperly relied upon a gap in the record in crafting the physical component of the RFC. Plaintiff's Brief [13-1] at 16-30.

**A. Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). An adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. The ALJ Erred by Failing to Consider the Medical Opinion of Plaintiff's Obstetrician.**

The record contains a "Physical Assessment for Determination of Employability" form, which was completed by plaintiff's obstetrician, Dr. Williams, on October 4, 2016. [10] at 642-645. At the time of Dr. Williams' assessment, plaintiff was pregnant. *See* id. at 643. On the form, Dr. Williams indicated that plaintiff suffered from sciatic nerve pain and limited mobility. Id. at 643, 645. Presumably as a result of these conditions, plaintiff "[wa]s able to participate in activities (e.g. work, education and training) . . . [for up to] 20 hours per week with reasonable accommodations". Id. at 642. The space for the "Expected Duration" of this limitation was left blank. Id. Dr. Williams also indicated that plaintiff "[wa]s unable to participate in activities except treatment or rehabilitation" for a period of 4-5 months, reflecting the expected remainder of her pregnancy. Id. Finally, Dr. Williams indicated that plaintiff was "very limited" in her

abilities to walk, stand, push, pull, bend, lift or carry, and "moderately limited" in her ability to sit - with no duration indicated. Id. at 645.

ALJ LeCours' decision does not discuss or even mention Dr. Williams' opinion. In fact, ALJ LeCours found that "[t]here is no medical source statement from a treating provider reflecting an opinion concerning the level of the claimants' alleged physical impairments". [10] at 23. The Commissioner argues that discussion of Dr. Williams' opinion was properly omitted because the limitations assessed therein were temporally limited to the four-to-five-month remainder of plaintiff's pregnancy, and that her back pain arguably improved after her pregnancy. Commissioner's Brief [14-1] at 13-15. This would seem to explain, or at least comport with, ALJ LeCours' statement that "[t]here is no evidence any acceptable medical provided took the claimant out of work, or kept her out of work for a 12-month durational period, because of a diagnosed physical medical impairment". [10] at 23. It is also uncontested that in order for plaintiff to be considered disabled, she would have to demonstrate an impairment that has caused or is expected to cause disability for a continuous period of at least 12 months. *See* 42 U.S.C. §423(d)(5)(A); 20 C.F.R. §§404.1509, 416.909.

Nevertheless, ALJ LeCours' omission of Dr. Williams's opinion is problematic. Dr. Williams was a treating physician. At the time of plaintiff's claim, an ALJ was required to give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record". 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see* Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019).[5] If the ALJ decided a treating physician's opinion is

[5] "The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017." Montes v. Commissioner of Social Security, 2019 WL 1258897, *2 n. 4. (S.D.N.Y. 2019). This claim was filed prior to that date.

not entitled to controlling weight, he was then obligated to determine "how much weight, if any, to give it". Id. "In doing so, [the ALJ] must 'explicitly consider' the following, nonexclusive 'Burgess factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Id. at 95-96 (*citing* Burgess v. Astrue, 537 F.3d 117, 119 (2d Cir. 2008)). An ALJ's failure to explicitly apply the Burgess factors is "procedural error". Id. at 96.

ALJ LeCours did not explicitly consider these factors. While a court may still affirm where the ALJ has otherwise "provided 'good reasons' for its weight assignment" or if "a searching review of the record assures us that the substance of the treating physician rule was not traversed" (Estrella, 925 F.3d at 96 [internal quotations omitted]), those conditions are not satisfied here. ALJ LeCours failed to provide any reasons for his omission of Dr. Williams' opinion, and the Commissioner's *post hoc* rationalization for the omission of Dr. Williams' opinion "cannot serve as a substitute for the ALJ's findings". Merkel v. Commissioner of Social Security, 350 F. Supp. 3d 241, 249 (W.D.N.Y. 2018).

Of primary concern is that, contrary to the Commissioner's contentions, not all of Dr. Williams's findings appear to have been time restricted. The form in question indicates that the four-to-five-month expected duration applied only to the limitation restricting plaintiff from participating in *any* activities except treatment or rehabilitation. [10] at 643. Dr. Williams elsewhere indicated that plaintiff could work up to "20 hours per week with reasonable accommodations" with no time restriction indicated. Id. at 642. It seems illogical that he would articulate two very different limitations and intend for them to apply to the same time period. Finally, Dr. Williams indicated that plaintiff was "very limited" in her abilities to walk, stand,

push, pull, bend, lift or carry, and "moderately limited" in her ability to sit. Id. at 645. As to these findings, because of the way the form is drafted, it is unclear whether they are time-restricted or not.[6]

Thus, at the very least, Dr. Williams' assessment is ambiguous as to the expected duration of plaintiff's limitations. Where such ambiguities or inconsistencies exist in a treating physician's report, "the ALJ bears an affirmative duty to seek out more information from the treating physician . . . for clarification of the reasoning of the opinion." Lyman v. Commissioner of Social Security, 2020 WL 1131226, *3 (W.D.N.Y. 2020) (citations omitted). If any of the functional assessments of Dr. Williams' opinion were not time restricted, then - contrary to ALJ LeCours' statement - there *was* a "medical source statement from a treating provider reflecting an opinion concerning the level of the claimants' alleged physical impairments". [10] at 23. It is improper for the ALJ to completely omit discussion of a relevant medical opinion, much less a treating opinion. *See* Colon v. Astrue, 2013 WL 2245457, *11 (W.D.N.Y. 2013) (holding such omission an "abuse of discretion"); 20 C.F.R. §416.927(c) ("we will evaluate every medical opinion we receive"). Upon obtaining clarification from Dr. Williams regarding the expected duration of the assessed limitations, the ALJ should then explicitly evaluate her opinion as discussed above.

---

[6] Part of the confusion is that it appears that the intent of the form was for the medical provider to complete only one of the four numbered sections, but Dr. Williams completed two of them. *See* [10] at 642-643.

**C. The Mental Component of the RFC is Insufficiently Supported by Medical Opinion Evidence.**

Plaintiff argues that ALJ LeCours failed to properly weigh the evidence relating to her mental RFC. Plaintiff's Brief [13-1] at 20-28. Plaintiff points to a series of four assessments completed by LMHC Shannelle Slade, with whom she treated for multiple years. [10] at 431. Those assessments span the period from March 30, 2017 to June 11, 2018 (id. at 431-433, 706-722), variously indicate that plaintiff had moderate (id. at 708, 717) to marked (id. at 433) functional limitations, and repeatedly opined that plaintiff was "unable to participate in any activities except treatment" for some period of months following the evaluation. Id. at 708, 713, 717. However, ALJ LeCours, gave "little weight" to Ms. Slade's functional opinions, stating that they were "difficult to reconcile . . . with the information in her progress notes and findings on mental status evaluation", though he did credit her progress reports. Id. at 24.

Dr. Ransom conducted a consultative examination of plaintiff on April 3, 2017, and concluded that she would have only "mild episodic" limitations with respect to understanding, remembering, and applying complex directions and instructions, regulating emotions, controlling behavior, and maintaining well-being - but no other evidence of mental limitation. Id. at 425-27. However, ALJ LeCours found Dr. Ransom's opinion "only partially persuasive" and afforded it only "some weight", concluding that the claimant's testimony, medical source reports, mental evaluation findings, and the "benefit of the doubt" led him to adopt the more substantial restrictions itemized in his RFC determination. Id. at 25. The ALJ similarly assigned "some weight" to a non-severe opinion by state agency psychiatric consultant A. Dipeolu, PhD (id. at 70-80) and added the additional restrictions discussed above. Id. at 25.

Thus, the mental component of ALJ LeCours' RFC determination - which limited plaintiff to unskilled tasks, simple duties, low stress work, and limited interaction with the

general public and coworkers and frequent interaction with supervisors (id. at 20) - was based entirely on his interpretation of the non-medical opinion evidence of record.

While I agree that ALJ LeCours is ultimately responsible for "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole" (Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order); *see* 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2) and §§ 416.946(c), 416.927(d)(2)), his findings in this case are insufficiently supported by the medical opinion evidence of record.

It is well established that "the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017) (internal quotations omitted). The "general rule" is that the ALJ, as a layperson, "is not qualified to assess a claimant's RFC on the basis of bare medical findings", and that "where the medical findings in the record merely diagnose the claimant's . . . impairments and do not relate those diagnoses to specific residual functional capabilities . . . [the ALJ] may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). This court has held that "[b]y failing to give controlling, or even substantial, weight to any of the [medical source opinions], the ALJ's RFC determination is not based on a medical opinion[, and an] RFC determination made without the benefit of a medical opinion is insufficient to support the finding with substantial evidence". Marshall v. Berryhill, 2018 WL 6257430, *2 (W.D.N.Y. 2018). Where an ALJ proceeds without the support of a credited medical opinion, he is generally limited to making "common sense" assessments about a claimant's functional capacity. *See*, *e.g.*, Stoeckel v. Commissioner of Social Security, 2019 WL 5445518, *2 (W.D.N.Y.); Ippolito v. Commissioner of Social Security, 2019 WL 3927453, *4 (W.D.N.Y.). Moreover, "[a]n ALJ's

decision to formulate an RFC without specifically crediting medical opinion evidence of record is particularly fraught with peril in the context of disability based on mental illness." Kiggins v. Commissioner of Social Security, 2019 WL 1384590, *5 (W.D.N.Y.); *see also* Stoeckel, 2019 WL 5445518 at *2 ("[c]ourts . . . remain 'wary of permitting an ALJ to use common sense to assess mental limitations, which are by their nature highly complex and individualized'").

Here, ALJ LeCours formulated an RFC with a mental component that was not grounded in medical opinion, and he does not explain how such limitations are otherwise evident as a matter of common-sense interpretation of the record evidence. Therefore, his determination in this respect is not supported by substantial evidence and remand is required.

I recognize that Ms. Slade was a licensed social worker, which means she was "not considered an acceptable medical source under the applicable regulations. *See* 20 C.F.R. § 404.1513(d) and § 416.913; SSR 06-03p, 2006 WL 2329939. However, "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function . . . [and thus o]pinions from these medical sources, although not technically deemed 'acceptable medical sources' under the rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Fountain v. Berryhill, 2018 WL 4658203, *4 (W.D.N.Y. 2018) (internal quotations omitted). While I have previously noted that an ALJ is "free to discount an 'other source' opinion in favor of the objective findings of acceptable medical sources" including a consultative examiner, (Sheldon L. P. v. Commissioner of Social Security, 2021 WL 4451694, *4 (W.D.N.Y. 2021)), that is not what occurred here, as the ALJ also rejected the consultative examiner's opinion as to limitations.

**D. Gap in Record**

As I find remand otherwise appropriate for the reasons discussed above, I do not address plaintiff's remaining argument that ALJ LeCours improperly relied upon a gap in the record in crafting the physical component of the RFC. *See* Plaintiff's Brief [13-1] at 16-30.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [13] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [14] is also denied.

**SO ORDERED**.

Dated: March 29, 2022

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge